# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CROWDSTRIKE, INC.,

    Plaintiff,

    v.

DELTA AIR LINES, INC.,

    Defendant.

Civil Action No.
1:24-cv-04904-TWT

## DELTA AIR LINES, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

BACKGROUND OF THE CASE ..........................................................1

SUMMARY OF ARGUMENT..............................................................4

ARGUMENT AND AUTHORITIES ......................................................7

I.   CrowdStrike filed this action without subject-matter jurisdiction. ................7

    A.   The claims in Delta's first-filed state court lawsuit arise exclusively under Georgia law. ....................................................................7

    B.   CrowdStrike's proposed defenses to Delta's state law claims do not create federal question jurisdiction. ........................................8

        1.   The compliance-with-applicable-law provision in the parties' contract does not create a federal question case. .............................11

        2.   The federal laws CrowdStrike proposes to invoke in defending Delta's state tort claims do not create federal question jurisdiction. 13

        3.   Delta's invocation of Airline Deregulation Act preemption in defending putative customer class actions does not create federal question jurisdiction..........................................................15

II.   Even if there were subject-matter jurisdiction, this is not a proper declaratory judgment action because it merely asserts CrowdStrike's non-liability to damages claims based on its past conduct...................................................15

III.   Even if there were subject-matter jurisdiction and even if this were otherwise a proper declaratory judgment action, this Court should dismiss this action in favor of Delta's pending state court damages suit in which CrowdStrike may assert all of its purorted defenses.................................................18

CONCLUSION ..................................................................................24

## INTRODUCTION

Hours after Delta Air Lines, Inc. brought a state-law damages action against CrowdStrike, Inc. in Georgia state court, CrowdStrike filed this declaratory judgment action in a transparent attempt to avoid that forum and to publicly blame Delta for the damages CrowdStrike inflicted. CrowdStrike's action fails at every turn. There is no basis for subject-matter jurisdiction. The after-the-fact absolution it seeks is not a proper basis for declaratory judgment. And decisions of the U.S. Supreme Court, the Eleventh Circuit, and this Court forbid this sort of interference with pending state court action.

## BACKGROUND OF THE CASE

*CrowdStrike crashed millions of computers across the world.*

On July 19, 2024, CrowdStrike forced untested and faulty security updates on its customers, crashing over 8.5 million computers around the world. CrowdStrike's faulty update massively disrupted airlines, railroads, hospitals, emergency services, government agencies, banks, hotels, and other businesses, negatively impacting millions of people across the globe. Commentators have characterized this as the

1

"worst" and "largest" cyber event in history.[1]

CrowdStrike's faulty update disabled most Delta computers running on a Microsoft Windows operating system, crippled operations for several days, forced thousands of flight cancellations and delays, and adversely affected over a million Delta customers. Delta estimates it suffered over $500 million in losses, along with foregone future revenue and severe harm to its hard-earned reputation and goodwill.

Soon after this unprecedented catastrophe, CrowdStrike's President candidly and publicly acknowledged that it is "super important to own it when you do things horribly wrong, which we did in this case."[2] Now, however, CrowdStrike euphemistically characterizes its "horribly wrong" conduct as "a problematic content update." Compl. (Doc. 1) ¶ 1. And rather than "own" responsibility for the resulting damages, it aspires to avoid accountability in Delta's pending state court damages action through this later-filed action for declaratory judgment.

---

[1] *See, e.g.*, Joe Tidy, *CrowdStrike IT outage affected 8.5 million Windows devices, Microsoft says*, BBC (July 20, 2024), *available at* https://www.bbc.com/news/articles/cpe3zgznwjno; Dan Milmo et al., *Slow recovery from IT outage begins as experts warn of future risks*, The Guardian (July 19, 2024), *available at* https://www.theguardian.com/australia-news/article/2024/jul/19/microsoft-windows-pcs-outage-blue-screen-of-death.

[2] Wes Davis, *CrowdStrike accepted a 'Most Epic Fail' award at Def Con hacking conference*, The Verge (Aug. 12, 2024), *available at* https://www.theverge.com/2024/8/12/24218536/crowdstrike-accepts-def-con-pwnies-award-most-epic-fail-global-windows-it-outage.

*Delta's first-filed state law damages action*

Unable to obtain resolution out-of-court, Delta filed suit in the Superior Court of Fulton County, Georgia—a forum to which CrowdStrike agreed to in the contract. Delta's complaint was file-stamped 5:00 p.m., October 25. *See* Ex. 1 (Delta Complaint). It asserts Georgia statutory and common law claims for (1) Computer Trespass (O.C.G.A. § 16-9-93); (2) Trespass to Personalty (O.C.G.A. § 51-10-3); (3) Breach of Contract; (4) Intentional Misrepresentation/Fraud by Omission (5) Strict-Liability: Product Defect; (6) Gross Negligence; and (7) Georgia Deceptive and Unfair Business Practices Act (O.C.G.A. § 10-1-391 *et seq.*), along with claims for attorneys' fees and punitive damages. *Id.* at 23–35. Delta seeks only damages for CrowdStrike's past conduct, not any relief that would alter Delta's or CrowdStrike's obligations (or anyone's rights) under any federal law, treaty, or regulation.

*Hours after Delta's lawsuit, CrowdStrike responds with this action*

By 6:30 p.m. the same day that Delta filed, mainstream media was reporting the lawsuit. *See* Ex. 2 (Declaration of Tanya Reed) ¶ 5. Rather than defend Delta's state law damages claims in a court to which the parties had contractually agreed, CrowdStrike responded at 7:53 p.m. with this salvo proclaiming its blame-the-victim strategy. *See id.* ¶¶ 3–4.

CrowdStrike cannot invoke diversity jurisdiction because both parties are Delaware corporations. So to manufacture federal question jurisdiction for its PR

ploy, CrowdStrike asserts that Delta's exclusively state-law tort and contract claims "will turn on whether Delta complied with (i) the TSA's March 7, 2023 cybersecurity emergency amendment to the TSA's security programs; (ii) the Montreal Convention (May 28, 1999 (entered into force on Nov. 4, 2003)…; (iii) DOT regulation 14 C.F.R. § 259.5(b)(14); and (iv) 49 U.S.C. § 41712." Compl. ¶ 12.

Tellingly, though, the only declarations CrowdStrike actually seeks (Compl. ¶¶ 46 & 47) are that: (1) Delta's claims are "limited as set forth in the parties' June 30, 2022 Subscription Services Agreement"; (2) "any damages suffered by Delta … are the result primarily of Delta's own negligence"; and (3) "Delta also cannot establish that, under the laws of the state of Georgia, CrowdStrike engaged in grossly negligent or willful misconduct." In other words, CrowdStrike wants this Court to intervene in the pending Georgia proceedings to rule on the effect of contractual liability limitations, a comparative fault defense, and the sufficiency of evidence supporting Delta's Georgia law claims—declarations that have nothing to do with the purported basis for federal court jurisdiction.

## SUMMARY OF ARGUMENT

*CrowdStrike filed this suit with no basis for subject-matter jurisdiction.*

CrowdStrike alleges this Court's subject-matter jurisdiction because CrowdStrike allegedly intends to assert defenses based on Delta's supposed non-compliance with federal law. Those defenses will fail because the federal enactments

CrowdStrike cites create regulatory obligations *to the government* for the betterment *of consumers*, not IT vendors contracting with airlines. Those defenses will also fail because they have nothing to do with CrowdStrike's liability. But putting those flaws aside for now, CrowdStrike's stated intention to assert *defenses* based on Delta's supposed non-compliance with federal law does not make this a federal question case:

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and *not of the defense*, which will determine whether there is federal-question jurisdiction in the District Court.

*Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 248 (1952) (emphasis added). "Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law." *Id.*

   *This is not a proper declaratory judgment action.*

   Even if CrowdStrike's assertion of jurisdiction weren't such a farce, this would not be a proper declaratory judgment action. CrowdStrike doesn't seek guidance in the face of uncertainty or to establish its or Delta's rights to do or not do something in the future. Instead, CrowdStrike seeks absolution for state-law damages liability for its *past* conduct. Obviously, CrowdStrike doesn't trust the Georgia courts to adjudicate claims and defenses arising under Georgia statutes and

common law.

*This Court should dismiss CrowdStrike's action even if there were jurisdiction.*

Delta has already filed a state court damages action in which both parties may fully and fairly assert all their claims and defenses. The Supreme Court has repeatedly warned that, where "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995) (quoting *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495 (1942)).

The Eleventh Circuit instructs that "[t]his warning should be heeded," *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005), and this Court has repeatedly done so.[3] And, while some cases might present a colorable debate, this one does not. "The easy case is one in which the identical factual and legal issues are presented in both proceedings, so that the judgment in the state action will necessarily resolve the federal declaratory judgment action (or vice versa)."

---

[3] *See, e.g., Safeco Ins. Co. of Indiana v. Pearson*, No. 1:17-cv-3335-TWT, 2018 WL 279287 (N.D. Ga. Jan. 3, 2018) (Thrash, J.); *Mt. Hawley Ins. Co. v. East Perimeter Pointe Apartments LP*, 1:20-cv-3529-TWT, 2022 WL 992581, at *3 (N.D. Ga. Apr. 1, 2022) (Thrash, J.); *Mt. Hawley Ins. Co. v. East Perimeter Pointe Apartments LP*, 1:20-cv-3529-TWT, 2021 WL 9763362 (N.D. Ga. Aug. 25, 2021) (Thrash, J.); *Balfour Beatty Constr., LLC v. Aspen Specialty Ins. Co.*, No. 1:23-cv-3627-MHC, 2023 WL 11779818 (N.D. Ga. Oct. 17, 2023) (Cohen, J.).

*Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc*, 12 F.4th 1278, 1290 (11th Cir. 2021).

This is the easy case.

## ARGUMENT AND AUTHORITIES

I.   **CrowdStrike filed this action without subject-matter jurisdiction.**

While the Declaratory Judgment Act "enlarged the range of remedies available in the federal courts," it "did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). With diversity jurisdiction unavailable, CrowdStrike feigns federal question jurisdiction by asserting that "resolution of this action and Delta's threatened claims and alleged damages against CrowdStrike turn on the Court's application, interpretation, and determination of a number of federal laws and/or regulations." Compl. ¶ 11.

### A. The claims in Delta's first-filed state court lawsuit arise exclusively under Georgia law.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). But when federal courts assess jurisdiction over a declaratory judgment action, "the normal position of the parties is reversed." *Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826, 828 (11th Cir. 1992). Thus, a court does "not look to the face of the declaratory judgment complaint in order to determine the presence of a federal question. Instead, this court

must determine whether or not the cause of action anticipated by the declaratory judgment plaintiff arises under federal law." *Id.*; *see also, e.g.*, *Patel v. Hamilton Med. Ctr., Inc.*, 967 F.3d 1190, 1193 (11th Cir. 2020).

That's a simple task here. It is plain from the face of Delta's complaint that all of its claims arise under Georgia statutory or common law, not federal law. Indeed, CrowdStrike admits, as it must, that the actions Delta "threatened," *Wycoff*, 344 U.S. at 248, arise under state law. Specifically, CrowdStrike alleges that Delta "threatened to sue CrowdStrike for gross negligence or willful misconduct" (Compl. ¶ 42; *see also id.* ¶¶ 36–37); that there is a "credible threat of immediate litigation" arising from various contractual damages provisions (*id.* ¶ 43); and that "[a]ny claim Delta might assert against CrowdStrike" arises out of the Parties' contract (*Id.* ¶ 45).

These are state law claims. And to make the matter particularly obvious, the only relief CrowdStrike seeks are declarations on the effects of liability limitations in a contract expressly governed by Georgia law; a comparative fault defense governed by O.C.G.A. § 51-12-33(a) & (g), and the sufficiency of evidence supporting Delta's Georgia law gross negligence claims. *See* Compl. ¶¶ 46–47.

### B. CrowdStrike's proposed defenses to Delta's state law claims do not create federal question jurisdiction.

Federal courts possess subject-matter jurisdiction over declaratory judgment actions where, "if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise*

*Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 19 (1983). Hoping to travel under that theory, CrowdStrike cites *Household Bank v. JFS Group.*, 320 F.3d 1249, 1259 (11th Cir. 2003). Compl. ¶ 12. There the declaratory judgment plaintiff had received a customer's written threat of individual litigation on federal and state law claims that had been asserted in a separate class action. 320 F.3d at 1252. The Eleventh Circuit found federal question jurisdiction because it was "undisputed" that the customer "could have filed" an action "arising under federal law," and in fact had threatened to do so. *Id*. at 1257, 1259.[4]

Here, by contrast, Delta's already-filed damages claims do not "arise" under federal law—they invoke purely state law. And the only basis for jurisdiction pleaded by CrowdStrike is that it will assert defenses based on federal law. *See* Compl. ¶¶ 12–13. But federal law defenses do not transform state law claims into federal ones. Like removal cases, it is the "character of the threatened action"—not the potential defense—that "determine[s] whether there is federal-question jurisdiction in the District Court." *Wycoff*, 344 U.S. at 248. Thus, even in policy-laden areas like ERISA, there is no federal question jurisdiction over a declaratory judgment action asserting federal preemption of all of a plaintiff's anticipated state

---

[4] Moreover, the declaratory judgment plaintiff in *Household* was seeking prospective relief—a declaration that any dispute would have to proceed in arbitration, rather than court as threatened. Here, CrowdStrike improperly seeks a partial declaration that it is not liable in damages for its past conduct. *See infra* at Section II.

9

law claims.[5]

Nor will CrowdStrike find refuge in the rule that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). That exception requires "a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314 (2005)).

That is a rare and narrow exception, not remotely satisfied in this private dispute between an airline and its IT vendor. For example, even though federal courts have exclusive jurisdiction over patent claims,[6] they lack federal question jurisdiction over state-law legal malpractice suits that must necessarily resolve the validity of a patent to establish liability, causation, and/or damages. As the Supreme

---

[5] *See, e.g., Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court."); *Brown v. Connecticut Gen. Life Ins. Co*., 934 F.2d 1193, 1196 (11th Cir. 1991) (same); *Shands Teaching Hosp. & Clinics, Inc. v. Sec'y, United States Dep't of Health & Hum. Servs*., 847 F. App'x 814, 815–16 (11th Cir. 2021) (applying this rule to declaratory judgment actions).

[6] 28 U.S.C. § 1338(a).

Court reasoned, "although the state courts must answer a question of patent law to resolve Minton's legal malpractice claim, their answer will have no broader effects. It will not stand as binding precedent for any future patent claim; it will not even affect the validity of Minton's patent. Accordingly, there is no serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Gunn,* 568 U.S. at 264–65.

Here, the lack of jurisdiction is even more glaring—this is a bilateral dispute between Delta and its IT vendor under state tort and contract law. None of those claims is committed to the exclusive jurisdiction of the federal court or barred by federal preemption. And nothing decided in this case will affect or imperil the right of any government entity or any airline passenger to enforce whatever rights and requirements federal law might create.  Moreover, and independently dispositive, the federal issues CrowdStrike purports to raise are neither "necessarily raised," "substantial," nor "capable of resolution in federal court without disrupting the federal-state balance approved by Congress"—as the disconnect between those issues and the federal declarations sought by CrowdStrike emphasizes.

       **1. The compliance-with-applicable-law provision in the parties' contract does not create a federal question case.**

CrowdStrike apparently contends that a routine contract provision requiring both parties to comply with all applicable law, including federal law, makes this a

11

federal question case. Here's the language at issue:

> As applicable to each party's respective obligations under this Agreement, and notwithstanding anything to the contrary in this Agreement, each party shall comply with and cause each of its employees, agents and subcontractors to comply with, Applicable Laws, and shall obtain all applicable licenses, permits, permissions and consents which may be required of it by any Governmental Authority.

The provision goes on to specify that Applicable Laws include federal statutory and regulatory requirements. Of course, given the ubiquity of such clauses, federal question jurisdiction over commercial contract disputes between citizens of the same state would quickly become the norm, not the exception.

Grasping for jurisdiction, CrowdStrike suggests that it will defend Delta's state law claims on the theory that Delta breached this contract provision. Compl. ¶ 12. The evidence will show nothing of the sort, but what matters now is that even a good faith intent to defend state law claims based on federal law does not create federal question jurisdiction. As noted above, that's true even if (unlike here) federal law purportedly provides a complete defense, such as preemption,[7] or potentially determines the entire outcome, such as the question of patent validity in a state-law malpractice action for an attorney's negligent failure to obtain or defend a patent.[8] CrowdStrike could not go "to federal court to begin [its] federal-law defense before

---

[7] *See supra note* 6.

[8] *Supra* at 10–11.

12

the state court begins the case under state law." *Wycoff*, 344 U.S. at 248. What it attempts here is worse: seeking a federal forum *after* the state court case has begun.

> **2.** **The federal laws CrowdStrike proposes to invoke in defending Delta's state tort claims do not create federal question jurisdiction.**

CrowdStrike also says that it will argue federal law in defending Delta's state-law tort claims. *See* Compl. ¶ 47. Specifically, CrowdStrike seeks a declaration that "any damages suffered by Delta following the July 19 Incident are the result primarily of Delta's own negligence, as evidenced by, among other things, its violation of 49 U.S.C. § 41712 by committing unfair or deceptive practices." *Id.* In other words, CrowdStrike says it will argue that Delta's comparative fault based on its supposed violation of that statute—which regulates an airline's interactions with its customers, not its vendors.

Similarly, CrowdStrike promises (in vain) to show that Delta's injuries flow, in whole or in part, from its purported failure to comply with the TSA's March 7, 2023 cybersecurity emergency amendment (Compl. ¶ 24) or to adopt a sufficient Customer Service Plan under 14 C.F.R. § 259.5(b)(14) "to mitigate passenger inconveniences resulting from flight cancellations and misconnections" (*id.* ¶ 26). These are just more attempts to defend state law claims based on federal law. As CrowdStrike argues, "the primary issue is whether and, if so, to what extent, Delta may recover from delays caused by its own actions." *Id.* But comparative fault and

failure-to-mitigate damages are state-law defenses even where (supposedly) supported by federal law, not federal questions under § 1331.

CrowdStrike gets no closer to the jurisdictional mark threatening to argue that Delta cannot "pass[] onto CrowdStrike any fines, penalties, or other required payments Delta may incur from its failure to follow federal guidelines", including any fines the Department of Transportation ("DOT") might impose under 49 U.S.C. § 46301, or financial obligations arising from the Montreal Convention (which imposes certain obligations on Delta to international customers) or the FAA Reauthorization Act of 2024 (which addresses customer rights following cancellations and delays). Compl. ¶¶ 25, 28.

CrowdStrike claims these provisions will support its argument that "to the extent Delta neglected to comply with these obligations, Delta should not be permitted to seek recovery from CrowdStrike." *Id.* ¶ 29. Again, these are merely defenses based on federal law. CrowdStrike may hope its made-for-litigation attacks on Delta's customer service will tarnish Delta in the public eye or dampen Delta's pursuit of full and fair compensation. But they do not create federal question jurisdiction.[9]

---

[9] Further, 49 U.S.C. § 41712 does not create a private right of action that would permit any affirmative federal claim. *Bailey v. Rocky Mountain Holdings, LLC*, 889

> **3. Delta's invocation of Airline Deregulation Act preemption in defending putative customer class actions does not create federal question jurisdiction.**

Straining for jurisdiction, CrowdStrike notes that Delta is defending two putative customer class actions based on the Airline Deregulation Act's preemption of state laws that impose any extra-contractual duties upon an airline's rates, routes, and services. Compl. ¶ 13.[10] For good reason, CrowdStrike doesn't even attempt to explain why the federal preemption of certain consumer claims against Delta somehow transforms Delta's state law claims against its IT vendor into federal questions. CrowdStrike does not, and cannot, assert that either CrowdStrike or Delta can somehow invoke ADA preemption as a defense in their dispute. And, as noted above, there would be no jurisdiction even if it could.

**II.  Even if there were subject-matter jurisdiction, this is not a proper declaratory judgment action because it merely asserts CrowdStrike's non-liability to damages claims based on its past conduct.**

"The Declaratory Judgment Act is inappropriate to adjudicate past conduct." *Am. Ins. Co. v. Evercare Co.*, 699 F. Supp. 2d 1355, 1359 (N.D. Ga. 2010), *aff'd*, 430 F. App'x 795 (11th Cir. 2011). Rather, "the purpose of the Declaratory Judgment

---

F.3d 1259, 1268 n. 21 (11th Cir. 2018).  Nor do 14 C.F.R. § 259.5(b)(14) or the TSA's March 7, 2023 cybersecurity emergency amendment.  *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

[10] *See* 49 U.S.C. § 41713(b)(1); *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014).

Act is to settle 'actual controversies' *before* they ripen into violations of law or a breach of some contractual duty." *Digital Basement, LLC v. Gordon*, No. 1:14-CV-4069-SCJ, 2015 WL 12030510, at *6 (N.D. Ga. June 17, 2015) (emphasis added).

To that end, a declaratory judgment must resolve uncertainty about a party's rights or obligations to "minimize the danger of *avoidable* loss and the *unnecessary accrual* of damages." *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2751 (3d ed. 1998)) (emphasis in original).[11] When "potential liability ... already has accrued," "it is unavoidable"—that is, there is nothing further the declaratory judgment plaintiff can do to alter its conduct to avoid potential liability. *Id.*

For that reason, CrowdStrike's action "does not conform with the rationale underlying the Declaratory Judgment Act." *Id.* Potential liability for its conduct has already accrued. The declaration sought by CrowdStrike confirms that it seeks relief pertaining only to its past conduct and to limit its damages liability for that past conduct. Compl. ¶ 47.

In particular, CrowdStrike's request for a broad, fact-intensive adjudication that it "was not grossly negligent and did not commit willful misconduct in any way

---

[11] *See also, e.g.*, *Minnesota Min. & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673 (Fed. Cir. 1991) ("In promulgating the Declaratory Judgment Act, Congress intended to prevent avoidable damages from being incurred by a person uncertain of his rights and threatened with damage by delayed adjudication.").

in connection with July 19 Falcon update" reveals that the core of the dispute concerns state law issues regarding CrowdStrike's past conduct. Compl., ¶ 47; *id.* ¶ 46. "[I]t is not one of the purposes of the declaratory judgment acts to enable a prospective negligence action defendant to obtain a declaration of non-liability." *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 196 n.2 (5th Cir. 1991) (quoting *Cunningham Bros. Inc. v. Bail*, 407 F.2d 1165, 1168 (7th Cir. 1969)).[12] The contractual provisions and comparative negligence on which CrowdStrike seeks a declaration (Compl. ¶¶ 46–47) concern only a partial limitation of CrowdStrike's potential damages liability, which are likewise inappropriate for declaratory judgment and would not be dispositive in resolving the dispute between the parties.

That CrowdStrike's complaint was filed after—and apparently in response to—Delta's state-court complaint underscores the impropriety of its request. Despite knowing that it faced hundreds of millions of dollars in liability since at least early August, CrowdStrike waited until *after* Delta filed a lawsuit to seek declaration of its rights. That shows that CrowdStrike sought, not guidance for future action or

---

[12] *See, e.g.*, 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2765 (4th ed.) ("The courts also have held that it is not one of the purposes of the declaratory judgments act to enable a prospective negligence action defendant to obtain a declaration of nonliability.") (collecting cases); *S. Ins. Co. v. Bennett*, 680 F. Supp. 387, 389 (M.D. Ga. 1988); *United Ins. Co. of Am. v. Harris*, 939 F. Supp. 1527, 1531 (M.D. Ala. 1996); *Mut. Life Ins. Co. v. Adams*, 972 F. Supp. 1386, 1394 (N.D. Ala. 1997); *BNSF Ry. v. Town of Vinton*, No. CIVA 06-0062, 2006 WL 2915217 at *3 (W.D. La. Oct. 6, 2006).

relief from uncertainty, but liability protection for *past* conduct.  That does not

conform with the purpose and rationale of the Declaratory Judgment Act. So even if

the Court otherwise had subject-matter jurisdiction, it should dismiss this action.

*See, e.g.*, *Digital Basement*, 2015 WL 12030510, at *6; 28 U.S.C. § 2201(a).

**III.** **Even if there were subject-matter jurisdiction and even if this were otherwise a proper declaratory judgment action, this Court should dismiss this action in favor of Delta's pending state court damages suit in which CrowdStrike may assert all of its purported defenses.**

In "a case of actual controversy" a federal court "***may*** declare … rights and

legal relations." 28 U.S.C. § 2201(a) (emphasis added). This permissive text

"confer[s] on federal courts unique and substantial discretion in deciding whether to

declare the rights of litigants." *Wilton,* 515 U.S. at 286. Put simply, "[i]t only gives

the federal courts competence to make a declaration of rights; it does not impose a

duty to do so." *Ameritas*, 411 F.3d at 1330.

Where there is a pending state action, "it would be uneconomical as well as

vexatious for a federal court to proceed in a declaratory judgment suit where another

suit is pending in state court presenting the same issues, not governed by federal law,

between the same parties." *Brillhart*, 316 U.S. at 495. In *Ameritas*, the Eleventh

Circuit provided a nonexclusive list of factors to guide a district court under those

circumstances:

(1) [T]he strength of the state's interest in having the issues raised in the
federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"-that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more efficient;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

411 F.3d at 1331.

These factors "are not exhaustive; not all are required; and no one is controlling." *Nat'l Tr. Ins. Co.*, 12 F.4th at 1286. But there's an overarching principle: "[t]he more that a concurrent state (or federal) court action is similar to a federal declaratory judgment action, the more likely it will be that a district court's decision to not address a [declaratory judgment] claim will be left undisturbed." *Id.* at 1285. "The easy case is one in which the identical factual and legal issues are presented in

19

both proceedings, so that the judgment in the state action will necessarily resolve the federal declaratory judgment action (or vice versa)." *Id*. at 1290.

That's this case. The parties are identical, and all of CrowdStrike's arguments and defenses must be resolved in adjudicating Delta's Georgia-law damages claims. And to the extent that CrowdStrike raises the purported federal defenses listed in its complaint, (Compl. ¶ 12), the Georgia courts are "presumptively competent[] to adjudicate" them. *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). Therefore—as this Court has recognized—dismissal is "the better approach" because "(1) the issues in both cases are … identical, (2) they are based on substantially the same facts, (3) and [CrowdStrike] … has the ability to raise their specific issue[s] in the parallel litigation." *Safeco*, 2018 WL 279287, at *2.

Under these circumstances, all the *Ameritas* factors direct dismissal. As for the first—"the strength of [Georgia's] interest"—the Subscription Services Agreement is governed by Georgia law and was executed in Georgia by Delta, whose principal place of business is also in Georgia. And Delta asserts exclusively Georgia-law claims. "[B]ecause there is a live controversy before a Georgia court between the same parties and involving the same issues[,] Georgia, therefore has a strong

interest in deciding the case before it." *Safeco*, 2018 WL 279287, at *3.[13]

The second and third factors—whether the federal action would settle the controversy or serve a useful purpose in clarifying the parties' legal relations—also counsel dismissal. All of CrowdStrike's arguments would be resolved in the course of adjudicating Delta's damages claims. So "the resolution of the pending state court matter could," indeed *would*, "resolve the issues pending before this court." *Safeco*, 2018 WL 279287, at *4. By contrast, CrowdStrike seeks limited declarations on certain issues, essentially to limit Delta's recovery on its state court claims. *See* Compl. ¶ 47. As this Court observed in a similar case, "it would lead to piecemeal litigation, delays, and give [CrowdStrike] access to a federal forum when the issue could just as easily be litigated in the [state] action." 2018 WL 279287, at *4. "All of this would lead to considerable interference with the state court proceedings, from both a procedural and substantive perspective." *Id.*

The fourth factor—whether the declaratory remedy is being used merely for

---

[13] Likewise, in *National Trust*, the Eleventh Circuit affirmed the district court's finding that Alabama "has a compelling interest" because "Southern Heating is an Alabama company, the underlying insurance policy was issued in Alabama, …the decedents were Alabama residents" and "Alabama law governs the interpretation" of the policy. 12 F.4th at 1287; *see also Frankenmuth Mut. Ins. Co. v. Horne*, No. 1:19-CV-91 (LAG), 2019 WL 9852884, at *2 (M.D. Ga. Nov. 7, 2019) ("Georgia law governs the interpretation of the contract. As a result, there is a close nexus between the underlying issues and Georgia law, and Georgia has a strong interest in having the issues raised decided in its state courts.").

the purpose of procedural fencing—could hardly be clearer. This action is nothing more than CrowdStrike's reactive attempt to avoid a state forum (to which it had agreed) in which all of its defenses may be fairly litigated. Moreover, this factor "by its nature weighs more heavily in favor of the declining jurisdiction as the similarity of concurrent proceedings increases." *Nat'l Tr.*, 12 F.4th at 1287. Here Delta's prior damages action encompasses anything CrowdStrike hopes to litigate here instead.

Notably, this fourth factor "seeks to prevent" just this sort of attempt to secure a federal arena for a case that—like Delta's exclusively state-law damages suit—is otherwise not removable. *Id.* "Because 'federal courts discourage parties from using the Declaratory Judgment Act for racing to the courthouse,' this factor weighs in favor of dismissal." *Frankenmuth*, 2019 WL 9852884, at *3. CrowdStrike's obvious purpose is to avoid the Georgia courts and "place the putative wrongdoer [(CrowdStrike)] in the position of plaintiff and the alleged injured party [(Delta)] in the position of defendant." *Id.* Rewarding that strategy "would invite constant federal interference in state litigation, and would consistently undermine a plaintiff's choice of forum." *Safeco Ins.*, 2018 WL 279287, at *2. CrowdStrike should not be permitted to "avail themselves of a federal forum … where they would not otherwise have been able to, despite the fact that they could just as easily have asserted the issue in the state litigation." *Id.*

The Eleventh Circuit has explained that "the relevance and weight of the fifth,

sixth, seventh, and eighth" factors—which involve the overlap of the actions, the sufficiency of the state forum, and the desire not to "improperly encroach on state jurisdiction" [14]—is "driven by the degree of similarity between proceedings." *Nat'l Trust*, 12 F.4th at 1287. Again, those are easy factors to weigh here, where everything CrowdStrike says it will argue to this Court will be resolved in a Georgia lawsuit asserting Georgia claims between parties to a Georgia contract. "For this Court to swoop in and take a slice (but only a slice) of that dispute away from the state court via [CrowdStrike's] declaratory judgment action would undoubtedly create friction and unnecessary encroachment on the state court proceedings." *Balfour Beatty Construction, LLC v. Aspen Specialty Ins. Co.*, No. 1:23-cv-3627-MHC, 2023 WL 11779818, at *5 (N.D. Ga. Oct. 17, 2023) (Cohen, J.) (internal quotation marks and citation omitted).

"Rather than have two courts duplicate effort and assess the same underlying facts, a far more sensible and efficient approach is for the state court that is already tasked with examining those facts in the underlying case to apply those same facts to the pending claims for declaratory relief." *Safeco Ins.*, 2018 WL 279287, at *4. "[T]he more effective and efficient remedy is for the Georgia court to hear all the issues in this matter at a single stroke, reaching a final conclusion with all the parties

---

[14] *Ameritas*, 411 F.3d at 1331.

[and claims] before it." *Frankenmuth*, 2019 WL 9852884, at \*3; *Balfour*, 2023 WL 11779818, at \*4 ("Given the state court's greater familiarity with its own law, it is not an abuse of discretion for this Court to step aside out of respect for the Georgia court." (cleaned up)).

## CONCLUSION

The Court should dismiss this action, which is a fruitless attempt to invoke this Court's subject-matter jurisdiction in pursuit of an improper declaratory judgment action that is designed to accomplish precisely the federal interference with state court proceedings that the Supreme Court, Eleventh Circuit, and this Court have forbidden.

This 1st day of November, 2024.

David Boies
(*pro hac vice* forthcoming)
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
20th Floor
New York, NY 10001
(914) 749-8200
dboies@bsfllp.com

Hsiao (Mark) C. Mao
(*pro hac vice* forthcoming)
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street
41st Floor
San Francisco, CA 94104

/s/ *Frank M. Lowrey IV*
Frank M. Lowrey IV
Georgia Bar No. 410310
Jane "Danny" Vincent
Georgia Bar No. 380850
Michael R. Baumrind
Georgia Bar No. 960296
Amber Greenaway
Georgia Bar No. 401191
**BONDURANT MIXSON & ELMORE, LLP**
One Atlantic Center
Suite 3900
1201 West Peachtree Street NW
Atlanta, Georgia 30309
(404) 881-4100
lowrey@bmelaw.com

24

(415) 293-6800
mmao@bsfllp.com

James P. Denvir
(*pro hac vice* forthcoming)
Michael S. Mitchell
(*pro hac vice* forthcoming)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
jdenvir@bsfllp.com
mmitchell@bsfllp.com

vincent@bmelaw.com
baumrind@bmelaw.com
greenaway@bmelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the foregoing **DELTA AIR LINES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record.

This 1st day of November, 2024.

*/s/ Frank M. Lowrey IV*